UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THOMAS STALCUP,<br><br>　　　Plaintiff,<br><br>v.<br><br>DEPARTMENT OF DEFENSE,<br><br>　　　Defendant. | C.A. No. 1:21-MC-91009-LTS |

# EXHIBIT 1

## AFFIDAVIT OF HENRY F. HUGHES

My name is Henry F. Hughes and I reside at 4000 Mount Atlas Lane, Haymarket, Virginia, 20169. In 1996, I was assigned to respond to and participate in the investigation of the crash of TWA Flight 800 as Senior Accident Investigator for the National Transportation Safety Board [NTSB]. I was initially assigned as the Survival Factors Specialist on the NTSB's "Go-Team" responding to the crash of TWA Flight 800. A Go-Team is made up of an Investigator-in-Charge and a group of specialists assigned to respond to the accident scene. As the survival factors specialist, my responsibilities included looking at how and why people were injured, injury causing mechanisms, restraint systems and emergency response. Once it was determined that the Flight 800 crash was a non-survivable event, my tenure on the Go-Team ended.

Immediately thereafter, Mr. James Kallstrom, who was in charge of the FBI's investigation to determine whether or not the crash was caused by a criminal act, contacted NTSB senior management and requested that the interior of the aircraft be reconstructed. Dr. Bernard Loeb, who was the NTSB's Director of the Office of Aviation Safety, then assigned me to the task. My first responsibility was to establish a reconstruction area for the exterior, main fuselage and major components of the airplane inside a hangar at Calverton, New York. Shortly thereafter, I became Chairman of the Airplane Interior Documentation Group and supervised a team of ten investigators from various agencies and companies including TWA, the New York State Police, Suffolk County Police, the Federal Aviation Administration, Boeing and the International Association of Machinists and Aerospace Workers.

My Group and I were responsible for documenting and reconstructing the cockpit and passenger areas of the airplane, including the cargo bays. We were also responsible for determining whether or not any proposed scenario for the cause of the crash was consistent with the damage to the airplane interior components.

On a daily basis, we examined incoming aircraft parts from a forensic evidence perspective using protocols that I established. We examined them for holes and penetrations and identified component parts, determining whether they were part of the structure of the plane or of the interior and from where within the airplane each part came. Once we did that, we created a full-scale layout. We taped off a concrete area inside a separate hangar that had the same dimensions as the accident airplane. Then, along the center or keel line of the airplane, we established the different seating areas, a cockpit area and the cargo bay areas on a one-to-one scale. Then component parts were laid out on the floor in the same position they would have been in an intact airplane. To aid us in that effort, I sent my TWA and Boeing specialist to Boeing and TWA maintenance and we documented every modification made to the airplane from the date of manufacture to within a week prior to explosion. With that guide, we were able to construct on the floor in two dimensions the passenger seats, crew seats, toilets and all passenger components of the airplane. As more components came in, we were able to

1

reconstruct about 95% of the airplane. Then, using wooden frames and wire, we fit together the broken metal, seat parts and other components laid out on the floor to recreate almost all the seats, the spiral stairway, the cockpit and other areas of the airplane interior. We also re-built the galleys, lavatories, and cargo bay to complete our reconstruction of virtually the entire interior of the airplane. At that point, we were able to examine the interior and catalogue the specific types of damage sustained. That information was compared with a similar investigation and examination of the victims and their injuries overseen by NTSB forensic consultant and chief Army pathologist Colonel Dennis Shanahan. Our findings matched those of Colonel Shanahan.

As Group Chairman of the Airplane Interior Documentation Group, I also spun off an additional group to conduct a comparative analysis between the damage to the airplane and the passengers' injuries. This required building two distinct databases (one documenting the forensic evidence pertaining the damage and the other documenting the passenger injuries and locations) and then correlating them. Our resulting comparative analysis showed that in general, the injury to the passengers and the damage to the seats and the interior of the airplane correlated, i.e., if a passenger in a given seat was burnt, his seat was burnt. This was expected. What was unexpected was that unlike any other investigation my investigators and I had ever conducted, we discovered that there was no consistent pattern of thermal or impact injuries or damage anywhere on the plane. In other words, In one seat row, one person and his/her seat would be burned while the person and seat located right beside the burned person would have no visible injuries or burns and no significant seat damage. Then, the person and seat next to that intact passenger and seat, would be completely destroyed.

This absolute inconsistency of damage or injury pattern from one seat and victim to the next, led us to conclude that the most likely cause of this as well as the high degree of separation of the component parts of the interior early in the crash sequence, was an ordnance explosion caused by high explosives. The localized low order explosion that NTSB officials said resulted from ignited fuel vapors in a fuel tank between the wings would not have been powerful enough nor dispersed enough to create this kind of widespread damage.

The officially proposed low order explosion (or deflagration) would have caused localized damage to the airplane interior and thermal injuries to passengers and crew in the area where the explosion occurred. The people in the localized area of the explosion would have had similar injuries, which was not the case with Flight 800, where the damage to the interior and the victims' injuries were random.

As Group Chairman of the Airplane Interior Documentation Group, I was also responsible for overseeing the writing of the group's report outlining our findings. I was, however, specifically instructed not to provide an analysis of those findings, which was unprecedented for an NTSB accident investigation. Regarding groups providing analyses of their factual findings, the NTSB's Aviation Investigation Manual, Section 4.4, "Group